UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERROLD JOHNSON, N67725<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | No. 19-cv-4888<br>Judge Franklin U. Valderrama |

ORDER

Plaintiff Jerrold Johnson (Johnson) is an inmate at Stateville Correctional Center (Stateville), an Illinois Department of Corrections (IDOC) facility, and suffers from hearing loss. Johnson alleges that IDOC and its employees were deliberately indifferent to his progressive hearing loss and failed to provide proper treatment for his hearing loss and other injuries.

In his Second Amended Complaint (SAC), Johnson names the IDOC, Acting Director of the IDOC Rob Jeffreys (Jeffreys), Former Acting Director of the IDOC John Baldwin (Baldwin), Warden of Stateville Randy Pfister (Pfister), Health Care Unit Administrator at Stateville Donald Mills (Mills), Stateville Grievance Officer Anna McBee (McBee), IDOC Administrative Review Board member Ana Labr (Labr), Wexford Health Sources, Inc. (Wexford), the Estate of Wexford physician Dr. Saleh Obaisi, Wexford physician Dr. Ritz, and two Jane/John Doe Americans with Disabilities Act (ADA) Coordinators for IDOC and Stateville (collectively, Defendants), asserting a claim under 42 U.S.C. § 1983 (Section 1983), the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* Specifically, in his SAC, Johnson brings a claim under Section 1983 against Wexford and all individual Defendants acting in their individual capacities (Count I), and claims under the ADA and Rehabilitation Act for disability discrimination against IDOC and Jeffreys, acting in his official capacity (Counts II and III). R.[1] 135, SAC.

Defendants Pfister, Jeffreys and Wexford move to dismiss Count I pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. R. 144, IDOC Mot. Dismiss.; R.

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

143, Wexford Mot. Dismiss. The Independent Executor of Dr. Obaisi's Estate[2] moves to dismiss the SAC pursuant to Fed. R. Civ. P. 25 because Dr. Obaisi passed away in 2017, and Johnson never moved to substitute another party in his place. *Id.* For the following reasons, the Court grants both motions to dismiss.

## Background[3]

Johnson has suffered from hearing loss since before his incarceration at Stateville in 2009. SAC ¶¶ 1, 48. In 2014, Johnson complained to various IDOC healthcare officials regarding a "very noticeable and progressive hearing loss" as well as frequent earaches, which led to severe migraines. *Id.* ¶ 51. In March 2017, Johnson visited a hearing specialist outside of Stateville after on-site tests showed that his hearing had worsened. *Id.* ¶ 86. The specialist recommended hearing aids and opined that Johnson's condition would worsen without them. *Id.* Two IDOC physicians, Dr. Ritz and Dr. Obaisi, denied Johnson's request for hearing aids. *Id.* ¶¶ 86–87, 92. Around October 2017, IDOC officials also denied Johnson's grievance requesting adequate medical care and reasonable accommodations for his disability. *Id.* ¶¶ 68–69, 71, 74, 77.

IDOC provided Johnson with a hearing aid in 2019. SAC ¶ 96. Even after Johnson received hearing aids, IDOC personnel allegedly ignored medical orders or instructions that the hearing aid batteries needed to be replaced every four to five days. *Id.* ¶ 97. Instead, new batteries were issued every ten days or longer, which resulted in his hearing aids being inoperable at least fifty percent of the time. *Id.* Although the Stateville Medical Director has prescribed and issued a medical permit for "over-the-ear headphones" for use with audio-visual equipment and a vibrating watch to assist with meal, recreation, and other scheduling needs, Johnson has yet to be provided with these accommodations. *Id.* ¶ 98. According to Johnson, Stateville's Facility ADA Coordinator has ignored Johnson's inquiries and complaints regarding the batteries and prescribed auxiliary aids. *Id.* ¶ 99.

Johnson sued the Defendants asserting a claim of deliberate indifference under Section 1983, alleging that Defendants violated his Eighth and Fourteenth Amendment rights (Count I); the ADA (Count II); and the Rehabilitation Act (Count III). SAC ¶¶ 108–126. Before the Court is Dr. Obaisi's Estate and Wexford's Motion to Dismiss Johnson's SAC under Rule 25 and Rule 12(b)(6), and Jeffreys and Pfister's Motion to Dismiss Johnson's SAC under Rule 12(b)(6).

---

[2] Dr. Obaisi passed away on December 23, 2017. R. 34, Suggestion of Death. Ghaliah Obaisi has been appointed Independent Executor of Dr. Obaisi's estate and is represented by counsel in this matter. Accordingly, the Court will refer to "Dr. Obaisi's Estate" throughout this Order when referring to Defendant Dr. Obaisi.

[3] The Court accepts as true all the well-pled facts in the complaint and draws all reasonable inferences in favor of the Johnson. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Rule 25 requires that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party . . . [i]f the motion is not made within 90 days after the service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1). The Court has the authority, under Fed. R. Civ. P. 6(b)(2), to extend the deadline post-expiration if the party who missed the deadline moves the court to do so "because of excusable neglect." Fed. R. Civ. P. 6(b)(2); *Atkins v. City of Chicago*, 547 F.3d 869, 871–72 (7th Cir. 2008).

## Analysis

Dr. Obaisi's Estate moves to dismiss the SAC pursuant to Rule 25 because Dr. Obaisi passed away in 2017, and Johnson has not moved to substitute another party in his place, and the time has passed to do so. Wexford Mot. Dismiss at 1–2. Defendants Pfister, Jeffreys and Wexford move to dismiss Count I of the SAC pursuant to Rule 12(b)(6) for failure to state a claim. *Id*. IDOC Mot. Dismiss at 1; R. 145, IDOC Memo. Dismiss at 1–2. The Court addresses each argument in turn.

### I.     Dr. Obaisi's Rule 25 Motion

Dr. Obaisi's Estate moves to dismiss the SAC pursuant to Rule 25. Wexford Mot. Dismiss at 3–4. Rule 25 governs the substitution of a party who has died. Fed. R. Civ. P. 25. Under the Rule, "if the claim on which the suit is based survives the death . . . the court may order the substitution of the proper party, ordinarily the personal representative of the party who has died." *Atkins*, 547 F.3d at 870. A statement noting the death must be served on the parties as provided in Rule 5 and nonparties as provided in Rule 4. Fed. R. Civ. P. 25(a)(3). "If the motion [to substitute a proper party for the decedent] is not made within 90 days after service of a

3

statement of death, the action . . . against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1).

Dr. Obaisi passed away in December 2017. Wexford Mot. Dismiss at 1. On January 21, 2021, Wexford filed a Suggestion of Death on the Record. Thus, the ninety-day period to move to substitute a proper party for Dr. Obaisi expired on April 21, 2021. To date, Johnson has not filed any such motion by that deadline, or at any point in the litigation, although the SAC names Dr. Obaisi's Estate "in his official and individual capacities." SAC ¶ 19. Notably, Johnson did not respond to Dr. Obaisi Estate's Rule 25 arguments in his response, and he has not made any argument of excusable neglect to excuse his failure to move to substitute Dr. Obaisi's Estate for Dr. Obaisi within the required timeframe. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Waiver aside, under the plain language of the Rule, the action against Dr. Obaisi must be dismissed. Accordingly, the claim against Dr. Obaisi is dismissed under Rule 25(a)(1). *See Sharif v. Funk*, 2020 WL 3545617, at *8–9 (N.D. Ill. June 30, 2020) (dismissing Section 1983 claims against Dr. Obaisi under Rule 25 where plaintiff did not file a motion for substitution).

## II. Wexford's Rule 12(b)(6) Motion

In Count I, Johnson asserts a claim of deliberate indifference under Section 1983 against Wexford, and all individual Defendants, alleging that Wexford violated his Eighth and Fourteenth Amendment rights. SAC at Count I. Wexford moves to dismiss Count I arguing that Johnson fails to state a claim for deliberate indifference against the entity. Wexford Mot. Dismiss at 4–6.

For background, Wexford provided medical care to inmates in prisons operated by IDOC. SAC ¶ 79. In Count I, Johnson alleges that Wexford adopted and adhered to IDOC policy as a part of its contract with the IDOC. *Id.* ¶¶ 82–83. Here, the relevant IDOC policy is the IDOC's eligibility criteria for receiving hearing aids. *Id.* ¶ 109. The IDOC's criteria is so high, Johnson alleges, that it prevents deaf or hard of hearing inmates from accessing IDOC's programs and services, thus violating the inmates' constitutional rights. *Id.* ¶ 109. Because Wexford effectuated IDOC's policy and was aware of the effect the high criteria had on Johnson, Wexford, alleges Johnson, has a policy of ignoring constitutional deprivations resulting from IDOC's policy. *Id.* ¶ 82.

In its motion, Wexford argues that Johnson is alleging one theory of liability: that Wexford has an express policy causing constitutional deprivation. Wexford Mot. Dismiss at 5. This contention, the way Wexford sees it, is flawed. Johnson, according to Wexford, alleges that the policy causing the constitutional violation is Wexford following an IDOC policy. *Id.* Put differently, Johnson fails to cite to any *Wexford policy* as causing a constitutional violation. *Id.* (emphasis added). To the extent

4

Johnson seeks to hold Wexford liable for adopting an IDOC policy, argues Wexford, that is insufficient under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). Mot. Dismiss at 6 (citing *Morissette v. Wexford Health Sources, Inc.,* 2023 WL 2058400, (N.D. Ill. Feb. 16, 2023)).

Johnson insists that he states a *Monell* claim because "Wexford policy prioritized adherence and adoption of an IDOC policy over [his] constitutional rights." R. 151, Pl.'s Combined Resp. (Resp.) at 3. The deprivation of his constitutional rights, submits Johnson, was based on an express policy. *Id*. This policy, contrary to Wexford's suggestion, argues Johnson, need not be in writing to be "express," rather it can be implicit. Resp. at 4 (citing *Dixon v. Cook County*, 819 F.3d 343, 348 (7th Cir. 2016)). Johnson asserts that *Morissette*, relied upon by Wexford, is factually distinguishable as in that case, unlike this case, among other differences, the Wexford doctors were not blindly following IDOC policy. Resp. at 5. At this stage, asserts Johnson, he sufficiently pleads a Wexford policy that deprived him of his constitutional rights. *Id.* at 5–6.

Under Section 1983, a person may sue anyone who, while acting under color of law, causes him to be deprived of any of his constitutional rights. 42 U.S.C. § 1983; *Connick v. Thompson*, 563 U.S. 51, 60–62 (2011). An action against a defendant in his official capacity is, in essence, an action against the governmental entity of which the official is an agent. *Monell*, 436 U.S. at 690 n.55. In *Monell*, the Supreme Court held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Rather, municipal liability exists only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.

Liability under Section 1983 can attach in three ways: (1) through an express policy that causes a constitutional deprivation when enforced; (2) through a widespread practice that is so permanent and well-settled as to constitute a "custom or usage" with the force of law, even if not authorized expressly or by written law; or (3) through an allegation that the constitutional injury was caused by a person with final decision policymaking authority. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (*citing McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

"Private contractors that provide medical services to prisoners are treated like municipalities for purposes of § 1983 claims." *Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578, at *2 (N.D. Ill. Oct. 31, 2016); *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017). "Applying this principle, the Seventh Circuit has consistently held that Wexford, which contracts with the Illinois Department of Corrections to provide medical care to inmates at IDOC facilities, can be sued under 42 U.S.C. § 1983." *Willis v. Williams*, 2022 WL 4599260, at *14 (N.D. Ill. Sept. 30, 2022).

5

To state a *Monell* claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference" that Wexford maintained a policy or custom that caused the alleged constitutional deprivation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (cleaned up).[4] Mere "legal conclusions or elements of the cause of action" must be disregarded and "boilerplate" allegations that repeat the elements of a *Monell* claim without any further factual content are dismissed for failure to state a claim. *Martinez v. Sgt. Hain*, 2016 WL 7212501, at *3 (N.D. Ill. Dec. 13, 2016). Thus, to prevail on a *Monell* claim, a plaintiff must show that Wexford's policy was the "moving force" behind the alleged injury by demonstrating "a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). If Wexford's action is not facially unconstitutional, the plaintiff "must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (cleaned up).

Here, while Johnson has sufficiently alleged that Wexford adopted the IDOC policy, and that Wexford failed to treat his hearing loss because of the IDOC policy —as seen through his visits with Wexford doctors—he is required to show that Wexford's policy is the "moving force" behind the alleged injury. *Brown*, 520 U.S. at 404. Each roadblock Johnson alleges he encountered in trying to receive hearing aids is inescapably due to *IDOC's* criteria, not *Wexford's* criteria. Because he has only alleged factual allegations showing that Wexford adhered to IDOC's policy, he has not sufficiently alleged that Wexford carried an internal policy of ignoring constitutional violations because of this adherence. For these reasons, his claims are insufficient to state a claim that is plausible on its face.

Next, Defendants argue that Johnson is inappropriately asserting a *respondeat superior* claim against Wexford for the actions of Dr. Obaisi. Wexford Mot. Dismiss at 6 (citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) ("*Respondeat superior* liability does not apply to private corporations under § 1983."). Not so, counters Johnson, rather the allegations demonstrate that it is plausible "to conclude that Wexford adopted IDOC policy based on the conduct of Dr. Obaisi" as well as Dr. Ritz, another Wexford employee. Resp. at 1.

It is well settled that *respondeat superior* is inappropriate for Section 1983 claims. *See Shields*, 746 F.3d at 789. Therefore, to the extent Johnson seeks to hold Wexford liable under that theory vis-à-vis the actions of Dr. Obaisi, or Dr. Ritz, such a claim also fails.

On the foregoing bases, Wexford's motion to dismiss Count I is granted.

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

The Court now turns to Defendants Jeffrey and Pfister's Rule 12(b)(6) motion to dismiss Count I.

### III. Pfister and Jeffreys' Rule 12(b)(6) Motion

Defendants Jeffrey and Pfister argue that the Court should dismiss Count I for two reasons. First, Count I fails to allege the personal involvement of either Defendant as required by Section 1983. IDOC Memo. Dismiss at 1–2. Second, Count I fails to state a claim for deliberate indifference because it includes no allegations regarding Defendants' intent or state of mind, as required to state a deliberate indifference claim. *Id.* at 2. The Court addresses each argument in turn.

### A. Personal involvement

In Section 1983 lawsuits, government officials are responsible only for their own misconduct. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). This means that to recover damages from a prison official in a supervisory role, a plaintiff may not rely on a theory of supervisory liability, but must instead allege that the defendant, through his own conduct, violated the Constitution. *Id.* A supervisor who does not directly participate in the alleged misconduct can be liable if he "directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (cleaned up). This means that the official knew about the complained-of conduct and facilitated, approved, or condoned it, or turned a blind eye to it. *Id.*; *see Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001) ("[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable . . . ."). Put differently, they must act either knowingly, or with deliberate, reckless indifference. *Jones v. City of Chi.*, 856 F.2d 985, 992–93 (7th Cir. 1988); *see also Williams v. Moffett*, 2021 WL 825670, at *9 (N.D. Ill. Mar. 3, 2021).

#### 1. Jeffreys

Jeffreys moves to dismiss Count I, arguing that Johnson does not allege that he had any direct communication or contact with Jeffreys, or that Jeffreys had any direct role in the provisions of medical treatment to Johnson. IDOC Memo. Dismiss at 5–6. True, posits Jeffries, a defendant may be personally liable for a constitutional violation if the conduct causing the violation occurs at the defendant's direction, or with his knowledge and consent. *Id.* at 6 (citing *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003)). But Jeffreys contends that Johnson includes no such allegations. *Id.*

In his SAC, Johnson alleges that Jeffreys, while serving as Acting Director of the IDOC, was aware of the policy that prevented Johnson from being given hearing aids. SAC ¶¶ 59–60. Johnson further alleges that Jeffreys is culpable because he

7

knew of the problem and failed to correct it; by failing to correct the problem, Jeffreys consented to the constitutional deprivations suffered by Johnson. *Id.* at ¶¶ 60–61. Johnson contends that he adequately pleads Jeffreys' personal involvement that caused the deprivation of his constitutional rights. Resp. at 7. Non-medical prison officials, asserts Johnson "may become personally involved in an inmate's medical care by ignoring grievances that indicate a constitutional violation ignoring or failing to conduct an investigation of an inmate's grievance can indicate personal involvement in a constitutional violation." Resp. at 7 (citing *Hoddenback v. Chandler*, 2013 WL 5785598, at *3 (N.D. Ill. Oct. 28, 2013)). Specifically, Johnson argues that his claim against Jeffreys "extends to his omission—refraining from correcting IDOC policy—and consent—routinely failing to take any action in furtherance of correcting IDOC policy—which he knew had the effect of delaying adequate medical treatment and reasonable accommodations[.]" *Id.* at 7–8.

The Court agrees with Jeffreys. In the SAC, Johnson only asserts two allegations against Jeffreys: (1) that Jeffreys knew of the IDOC's criteria for hearing aids, and (2) that Jeffreys knew that being deaf or hard of hearing could deny inmates access to IDOC programs and services. SAC ¶¶ 59–60. Johnson has not alleged that Jeffreys knew of his circumstance, or even that Jeffreys knew that the IDOC policy was, in practice, causing unconstitutional deprivations. *See generally*, SAC. Because no facts allege that Jeffreys "acquiesced in some demonstrable way," Johnson has failed to allege misconduct against Jeffreys. *Palmer*, 327 F.3d at 594; *Perez*, 792 F.3d at 781 (holding that government officials are responsible only for their own misconduct). The allegations in the SAC regarding Jeffreys' involvement are conclusory and mere recitations of the elements. *See Ashcroft*, 556 U.S. at 678. Finding that the SAC does not sufficiently allege that Jeffreys was personally involved, as required, the Court need not address whether Jeffreys was deliberately indifferent. For the foregoing reasons, Jeffreys' motion to dismiss Count I is granted.

### 2. Pfister

Pfister also moves to dismiss Count I, arguing that Johnson does not allege that he had any direct communication with Pfister, or that Pfister had any direct role in the provision of medical treatment to Johnson. IDOC Memo. Dismiss at 6–7. Additionally, Pfister argues that a warden's signature on a grievance does not mean the warden can be held liable if the grievance is not resolved. *Powell v. Godinez*, 1997 WL 603927, at *5 (N.D. Ill. 1997). He also maintains that a warden is allowed to relegate medical care to his medical staff. *Gevas v. Mitchell*, 2012 WL 3554085, at *5 (7th Cir. 2012). Finally, Pfister argues that failure to take corrective action is not sufficient to state a claim of personal involvement. IDOC Memo. Dismiss at 5–7; (citing *Soderback v. Burnett County, Wis.*, 752 F.2d 285, 293 (7th Cir. 1985)). The way Pfister sees it, without specific allegations that Pfister knew of conduct resulting in the violation of Johnson's Eighth of Fourteenth Amendment rights, and then

8

"facilitated, approved, condoned, or turned a blind eye to that conduct," Johnson fails to state a claim upon which relief may be granted. IDOC Memo. Dismiss at 7.

As with Jeffreys, Johnson attempts to hold Pfister liable through his knowledge of Johnson's situation and his failure to correct it. SAC ¶ 67. Johnson alleges that Pfister "refrained from correcting IDOC policy or taking any action in furtherance of correcting the policy that would render Plaintiff adequate medical treatment." *Id.* In his response, Johnson insists that Pfister's conduct mirrored Jeffreys' conduct. Resp. at 8. Namely, that Pfister refrained from correcting or taking any action to correct IDOC policy and participated in the denial of Johnson's requests for medical care. *Id.* Johnson maintains that he has alleged both a systematic lapse in enforcing policy, and a specific instance in which the warden was involved with the prison's operation. Resp. at 9.

However, Johnson provides additional factual allegations that Pfister was aware of Johnson's disability, the denial of his hearing aids, and the effect thereof on Johnson's ability to participate in IDOC programming. SAC ¶ 68. To show this, Johnson cites Pfister's concurrence on Johnson's grievance form from October 2017. *Id.* ¶ 69 (citing R. 135-3, Exh. C, Grievance).

On that basis, the Court finds that Johnson has sufficiently alleged that Pfister was involved in a specific instance relating to the prison's operation and a systematic lapse in enforcing policy. Although wardens can typically relegate medical care to their medical staff and are not liable merely because a grievance was not resolved, they can still be liable when they are aware that an inmate is suffering from constitutional deprivations. Here, Pfister was allegedly made aware that a deaf or hard-of-hearing inmate could not participate in IDOC programs because of the IDOC's criteria for hearing aids through Johnson's grievance. SAC ¶ 68; Grievance. For purposes of a motion to dismiss, this is enough to show that Pfister was aware of the possibility that a systematic lapse was occurring. *See id.* Pfister's failure to act could be seen as consenting or "turning a blind eye" to the deprivation. *Sanville,* 266 F.3d at 740; *Chavez,* 251 F.3d at 651. For the foregoing reasons, at this stage, the Court finds that Johnson has sufficiently alleged that Pfister was personally involved in the alleged constitutional deprivation through his denial of Johnson's grievance. *See id.*

With that finding, the Court next addresses whether Johnson has sufficiently alleged that Pfister was deliberately indifferent to his serious medical condition. IDOC Memo. Dismiss at 8–9.

### B. Deliberate Indifference

The Eighth Amendment prohibits deliberate indifference to a prisoner's "serious medical needs," as deliberate indifference "constitutes the unnecessary and

9

wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (cleaned up). This indifference includes "intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Id.* "By contrast, mere negligence in the provision of medical care does not constitute a violation of the [Eighth] Amendment." *Id.* (cleaned up). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm" but is not entitled to demand specific care, or even the best care possible. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). The defendant must have had a culpable state of mind, intending that the prisoner suffer the deprivation or permitting it through "deliberate indifference." *Powell*, 1997 WL 603927, at *2 (cleaned up).

To exhibit deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (explaining that "an inmate must demonstrate that, objectively, the deprivation he suffered was sufficiently serious" and, subjectively, "prison officials acted with a sufficiently culpable state of mind[.]") (cleaned up); *see also Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) (finding that an official must not only "know about the conduct" but also "facilitate it, approve it, condone it, or turn a blind eye.").

### 1. Pfister

Here, Pfister also moves to dismiss on the basis that Johnson fails to allege the state of mind of any Defendant, let alone included allegations that Pfister's state of mind "approached intentional wrongdoing or criminal recklessness." IDOC Memo. Dismiss at 8–9 (citing *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012)). Pfister additionally argues that substandard or negligent medical care is insufficient to support a claim of deliberate indifference. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 97 (1976); *Sanville*, 266 F.3d at 734; *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)).

Johnson responds that Pfister's knowledge and consent to the medical treatment given to Johnson was sufficient to allege his state of mind. Resp. at 2, 7 (citing *Wilson v. Warren Cnty., Illinois*, 830 F.3d 464, 469 (7th Cir. 2016)). Johnson alleges that Pfister possessed the requisite state of mind under Section 1983 because Pfister "was aware" that his concurrence of Johnson's grievance further "prolonged [the] delay of treatment for Plaintiff," which in turn would deny him of his constitutional rights. SAC ¶¶ 68, 110. Johnson alleges that all Section 1983 Defendants, including Pfister, acted with "conscious disregard" for Johnson's medical needs. *Id.* ¶ 112.

10

The Court finds, viewing the allegations in favor of Johnson, that Johnson has not sufficiently alleged that Pfister intentionally delayed Johnson's medical treatment to the degree that it was unnecessary and wanton. Pfister is allowed to relegate the medical care of inmates to his medical staff. *Gevas*, 2012 WL 3554085 at *5. Following the decisions of the medical staff to adhere to IDOC's criteria regarding hearing aids does not constitute malice or intentional deprivation. Indeed, Johnson himself does not substantively respond as to how his alleged facts show malice or intentional deprivation. Resp. at 8. For these reasons, Johnson has not sufficiently alleged that Pfister possessed the requisite intent to deprive Johnson of medical treatment. On that basis, the Court grants Pfister's motion and dismisses Count I against him.

## Conclusion

For the foregoing reasons, the Court grants both motions. [143][144] Dr. Obaisi's Estate is terminated from this case. Count I is dismissed as to Wexford, and as to Jeffreys and Pfister in their individual capacities. Moreover, from the docket it is unclear whether the remaining Defendants have been served, however Defendants Baldwin, Miles, Mills, McBee, Lahr, Ritz, and the Jane/John Doe #1 and #2 have not entered any appearances. Given the age of this lawsuit, and Johnson's failure to move under Federal Rule of Civil Procedure 4(m) for any extension to serve the remaining Defendants, the Court dismisses Count I as to all Defendants. Because this dismissal comes after Johnson's third pleading attempt, this dismissal is with prejudice. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818–19 (7th Cir. 2013) (affirming dismissal with prejudice of third pleading attempt because "in court, as in baseball, three strikes and you're out").

Defendant Jeffreys only moved to dismiss Count I of the SAC. Counts II and III in the SAC are alleged against Jeffreys and the IDOC. As neither Defendant Jeffreys nor the IDOC moved to dismiss Count II and III, the case continues against those Defendants for alleged violations of the ADA and Rehabilitation Act for disability discrimination. By October 14, 2024, Defendants IDOC and Jeffreys must answer Counts II and III.

Dated: September 30, 2024

_____
United States District Judge
Franklin U. Valderrama